McCREADY *v.* BYRD, President et al.

[No. 139, October Term, 1949.]

*Decided April 14, 1950.*

132

The cause was argued before MARBURY, C. J., COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Donald G. Murray* and *Thurgood Marshall*, with whom were *Charles H. Houston* and *Robert L. Carter*, on the brief, for appellant.

*Kenneth C. Proctor, Assistant Attorney General,* with whom was *Hall Hammond, Attorney General,* on the brief, for appellees.

MARKELL, J., delivered the opinion of the Court.

This is an appeal from an order dismissing a petition for mandamus to require the governing board of the University of Maryland and officers of the university and its school of nursing to consider and act on petitioner's application, made on February 1, 1949, for admission as a first year student in the school of nursing, without regard to race or color, and admit her to the school upon her complying with the uniform lawful requirements for admission. No material facts are in dispute. Petitioner is a negro. She has all the educational and character requirements for admission. She was refused admission solely because of her race. The school of nursing is a branch or agency of the state government. It has been so held as to the law school. *University of Maryland v. Murray,* 169 Md. 478, 483, 182 A. 590, 103 A. L. R. 706.

In 1948 the State of Maryland and other southern states, without the consent of Congress under section 10 of Article I of the Constitution, entered into a regional

compact, which was subsequently amended and, as amended, is set out in and was ratified by Chapter 282 of the Acts of 1949, effective June 1, 1949, relating to the development and maintenance of regional educational services and schools in the southern states in the professional, technological, scientific, literary and other fields, so as to provide greater educational advantages and facilities for the citizens of the several states who reside within such region. By arrangement pursuant to the regional compact the State of Maryland has sent a number of white students to study veterinary medicine in a school in another state and has sent, or is willing to send, negro students for the same purpose to a different school in another state. No instruction in veterinary medicine is offered by the University of Maryland or any other state agency in Maryland. Pursuant to the regional compact a contract for training in nursing education, dated July 19, 1949, was made between the Board of Control for Southern Regional Education, "a joint agency" created by the regional compact, and the State of Maryland, relating to nursing education of three first year students from the State of Maryland in Meharry Medical College, School of Nursing, at Nashville, Tennessee. Meharry Medical School and its school of nursing receive negro students only. In August, 1949 the University of Maryland offered petitioner a course in nursing at Meharry Medical College at a total over-all cost to her, including living and traveling expenses, which would not exceed the cost to her of attending the school of nursing at the University of Maryland. Petitioner declined the offer.

From the uncontradicted testimony, in ample detail, of Doctor Pincoffs, since 1922 Professor of Medicine in the University of Maryland Medical School and chief physician at the University Hospital, and other witnesses called by respondents, it seems clear that in educational facilities and living conditions the nursing school at Meharry College is not only equal but superior to the University of Maryland nursing school. The offer to petitioner of a course in nursing at Meharry Medical

College therefore included every advantage except the one she now insists upon, viz., education in a state institution within the State of Maryland. Respondents stress the regional compact and the contract for training in nursing education. The terms and details of these agreements are not now material. Neither agreement mentions race. We may assume, without deciding, that the compact is valid without the consent of Congress. Under the contract the Board are only agents—or ambassadors—to negotiate a contract for nursing education between the State of Maryland and Meharry Medical College. Obviously no compact or contract can extend the territorial boundaries or the sovereignty of the State of Maryland to Nashville.

In *University of Maryland v. Murray, supra,* the court affirmed an order for the issue of the writ of mandamus, commanding the officers and governing board of the University of Maryland to admit the petitioner, a negro, as a student in the law school. It was contended, among other things, that the State had discharged its obligation to the petitioner by providing certain scholarships at Howard University in Washington. This contention was rejected because the petitioner had a "rather slender chance" of getting a scholarship and, if he got one, would be subject to traveling or living expenses to which he would not be subject at the University of Maryland law school. The court, in its opinion by Chief Judge Bond, remarked, "And as the petitioner points out, he could not there have the advantages of study of the law of this state primarily, and of attendance on state courts, where he intends to practice." *Supra,* 169 Md. 486, 182 A. 593, 103 A. L. R. 706. As has been indicated, this was not the ground of decision. In its opinion the court also said, "Whether with aid in any amount it is sufficient to send the negroes outside the state for like education is a question never passed on by the Supreme Court, and we need not discuss it now." *Supra,* 169 Md. 487, 182 A. 594, 103 A. L. R. 706.

The statement last quoted from the opinion, by Judge Bond, in the *Murray* case left open the question whether

it is sufficient to send negroes outside the state for education like that given white students in Maryland, and the remark first quoted left it arguable that in this respect there may be a difference between the study of law and the study of nursing. Law in Tennessee is not the same as law in Maryland; presumably a sound education in nursing is the same in Tennessee as in Maryland. The statement last quoted from the *Murray* case was of course correct when made, but it would not be correct if made now. Since the *Murray* case the question there left open has been "passed on by the Supreme Court" and has been foreclosed in a way that permits no distinction between the study of law and the study of nursing.

In *State of Missouri, ex rel. Gaines v. Canada,* 305 U. S. 337, 59 S. Ct. 232, 83 L. Ed. 208, the court reversed a judgment of the Supreme Court of Missouri which denied a writ of mandamus to compel admission of a negro to the University of Missouri law school. One of the grounds of the decision of the state court was that "adequate provision [had] been made for the legal education of negro students in recognized schools outside of this State." *Supra,* 305 U. S. 346, 59 S. Ct. 235, 83 L. Ed. 208. The court, in its opinion by Mr. Chief Justice Hughes, referred at some length to the *Murray* case, quoted the above question specifically left open in that case, (*supra,* 305 U. S. 345, 59 S. Ct. 232, 83 L. Ed. 208), and referred to the remark first above quoted and to similar contentions made in the Missouri case. *Supra,* 305 U. S. 349, 59 S. Ct. 232, 83 L. Ed. 208. After mentioning these contentions, the opinion brushed them aside and decided the question left open in the *Murray* case on broad grounds which are no less applicable to a school of nursing than to a school of law.

"We think that these matters are beside the point. The basic consideration is not as to what sort of opportunities other States provide, or whether they are as good as those in Missouri, but as to what opportunities Missouri itself furnishes to white students and denies to negroes solely upon the ground of color. The ad-

missibility of laws separating the races in the enjoy-
ment of privileges afforded by the State rests wholly
upon the equality of the privileges which the laws give
to the separated groups within the State. The question
here is not of a duty of the State to supply legal training,
or of the quality of the training which it does supply, but
of its duty when it provides such training to furnish
it to the residents of the State upon the basis of an
equality of right. By the operation of the laws of
Missouri a privilege has been created for white law
students which is denied to negroes by reason of their
race. The white resident is afforded legal education
within the State; the negro resident having the same
qualifications is refused it there and must go outside the
State to obtain it. That is a denial of the equality of
legal right to the enjoyment of the privilege which the
State has set up, and the provision for the payment of
tuition fees in another State does not remove the dis-
crimination.

The equal protection of the laws is 'a pledge of the
protection of equal laws.' *Yick Wo v. Hopkins,* 118 U. S.
356, 369, 6 S. Ct. 1064, 1070, 30 L. Ed. 220. Manifestly,
the obligation of the State to give the protection of equal
laws can be performed only where its laws operate, that
is, within its own jurisdiction. It is there that the equality
of legal right must be maintained. That obligation is
imposed by the Constitution upon the States severally as
governmental entities,—each responsible for its own laws
establishing the rights and duties of persons within its
borders. It is an obligation the burden of which cannot
be cast by one State upon another, and no State can be
excused from performance by what another State may do
or fail to do. That separate responsibility of each State
within its own sphere is of the essence of statehood
maintained under our dual system. It seems to be im-
plicit in respondents' argument that if other States did
not provide courses for legal education, it would never-
theless be the constitutional duty of Missouri when it
supplied such courses for white students to make equiva-
lent provision for negroes. But that plain duty would

exist because it rested upon the State independently of the action of other States. We find it impossible to conclude that what otherwise would be an unconstitutional discrimination, with respect to the legal right to the enjoyment of opportunities within the State, can be justified by requiring resort to opportunities elsewhere. That resort may mitigate the inconvenience of the discrimination but cannot serve to validate it." *State of Missouri, ex rel. Gaines v. Canada,* 305 U. S. 337, 349-350, 59 S. Ct. 232, 236, 83 L. Ed. 208.

It would be bold indeed to suggest that the late Chief Justice ever used words without due regard for their meaning. His words might be subsequently overruled or qualified by the court. But the words quoted have not been overruled or qualified. On the contrary, a case from Oklahoma, essentially the same as the Missouri case, was argued on Thursday, January 8, 1948, and was reversed on the following Monday, with the following *per curiam* opinion: "On January 14, 1946, the petitioner, a Negro, concededly qualified to receive the professional legal education offered by the State, applied for admission to the School of Law of the University of Oklahoma, the only institution for legal education supported and maintained by the taxpayers of the State of Oklahoma. Petitioner's application for admission was denied, solely because of her color.

"Petitioner then made application for a writ of mandamus in the District Court of Cleveland County, Oklahoma. The writ of mandamus was refused, and the Supreme Court of the State of Oklahoma affirmed the judgment of the District Court. [*Sipuel v. Board of Regents of University of Oklahoma,* 199 Okl. 36], 180 P. 2d 135. We brought the case here for review.

"The petitioner is entitled to secure legal education afforded by a state institution. To this time, it has been denied her although during the same period many white applicants have been afforded legal education by the State. The State must provide it for her in conformity with the equal protection clause of the Fourteenth Amendment and provide it as soon as it does for appli-

cants of any other group. *State of Missouri, ex rel. Gaines v. Canada,* 1938, 305 U. S. 337, 59 S. Ct. 232, 83 L. Ed. 208.

"The judgment of the Supreme Court of Oklahoma is reversed and the cause is remanded to that court for proceedings not inconsistent with this opinion.

"The mandate shall issue forthwith." *Sipuel v. Board of Regents of University of Oklahoma,* 332 U. S. 631, 632-633, 68 S. Ct. 299, 92 L. Ed. 247. We cannot subtract anything from what the Supreme Court has said. It would be superfluous to add anything.

> *Order reversed, with costs, and case remanded with direction to issue the writ of mandamus as prayed, except as to changes required by lapse of time.*